IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROBERT THIRY, | ) | |
| on behalf of himself | ) | |
| and others similarly situated; | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. |
| v. | ) | |
| | ) | |
| | ) | |
| OMNI SPECIALTY PACKAGING, LLC, | ) | |
| | ) | |
| | ) | |
| O'REILLY AUTOMOTIVE | ) | **JURY TRIAL DEMANDED** |
| STORES, INC.   d/b/a | ) | |
| O'REILLY AUTO PARTS, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| OZARK AUTOMOTIVE | ) | |
| DISTRIBUTORS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## CLASS ACTION COMPLAINT

COMES NOW Plaintiff, on behalf of himself and all others similarly situated, and for his

Class Action Complaint states and alleges as follows:

## INTRODUCTION

1.    For years, Defendants have deceptively and misleadingly labeled, marketed and

sold tractor hydraulic fluid as "303" fluid meeting "303" specifications when, in fact, the "303"

designation is obsolete and 303 specifications have not been available for over forty (40) years.

Defendants have also deceptively and misleadingly labeled, marketed and sold tractor hydraulic

fluid as meeting certain manufacturer specifications and providing certain anti-wear and protective

benefits when, in fact, Defendants knew, or should have known, the fluid they were selling did not

meet all listed manufacturer specifications and did not contain the anti-wear and protective properties required in tractor hydraulic fluid.

2.      Tractor Hydraulic Fluid (THF) is a multifunctional lubricant that has been manufactured for and used in tractors and equipment for over fifty (50) years.  It is designed to act as a hydraulic fluid, transmission fluid and gear oil for this equipment.  In the 1960s and early 1970s, John Deere (Deere) manufactured a popular and widely used THF called JD-303 or simply "303," and the term "303" became synonymous with the John Deere name and this high-quality and effective THF product.

3.      Sperm whale oil was an essential ingredient in Deere's 303 THF.  In the mid-1970s, the passage of laws protecting endangered species outlawed the use of sperm whale oil.   Deere was forced to manufacture a new tractor hydraulic fluid with additives that would be both effective and affordable.   Deere's "303" formula could no longer be manufactured or sold, and because its essential ingredient—sperm whale oil—could no longer be used, the designation became obsolete and there are no specifications available for "303" tractor hydraulic fluids.

4.      After Deere stopped producing and selling its 303 THF, Deere manufactured and sold several THF products with certain ingredient, viscosity, anti-wear and detergent additive specifications, including J14B, J20A and J20B.    The J14B specification became obsolete in the late 1970s.  During the time the J20A/B specifications were in use, Deere used a licensing program called Quatrol to police the quality of THF products in the marketplace.  The Quatrol program required blenders and sellers of competing THF products to submit test data to Deere prior to the use of the J20 specification on their product labels, to ensure the products met the advertised specifications.

5.      In the late 1980s or early 1990s, Deere abandoned the J20A/B specification as well. Today, John Deere manufactures and sells THF meeting or exceeding a specification called J20C or J20D (low viscosity).   The J20C fluid is sold under the name "Hy-Gard," and many other manufacturers market and sell products meeting the J20C specification in order to compete with John Deere.  The following timeline illustrates the history of 303 THF:



6.      John Deere discontinued the Quatrol program around the time J20A was discontinued (approximately 1989). The subsequent lack of a quality control program or policing of the products in the market resulted in a "free for all" with respect to the THF manufactured and sold in the open market and the opportunity for unscrupulous manufacturers and sellers to falsely use the Deere specifications (and other manufacturers' specifications) on the labels of the THF products they sell.

7.      Defendants deceptively and illegally trade on the obsolete and non-existent "303" designation, the other obsolete J14B and J20A specifications, and the John Deere trade name that was and has continued to be so prevalent in the industry.   Because there is no known "303"

specification, there is no way for Defendants to truthfully claim their product meets or is in compliance with any such specification.

8.      Nonetheless, Defendants promote their 303 THF Product, O'Reilly 303 Tractor Hydraulic Fluid ("303 THF Product") and offer it for sale as an economically priced tractor hydraulic fluid that meets many manufacturers' specifications, has effective lubricant and anti-wear additives and properties, and is safe for use in purchasers' equipment.  Defendants' 303 THF Product was sold with eye-catching photos of modern tractors and industrial equipment and was also sold in bright, yellow 5-gallon buckets.  By name dropping a list of equipment manufacturers, Defendants sought and continue to seek to create an impression of quality and to take advantage of consumers' lack of understanding of the multitude of complex manufacturer specifications.

9.      In addition to deceptively promoting a designation that is obsolete, Defendants use poor quality base oils, waste oil, line flush, used motor oil and diluted additive packages in their 303 THF Product in order to keep production costs down and increase profits.  As a result of the inferior ingredients and this "down-treating" of addictive packages, Defendants' 303 THF Product not only lacks the required lubricant and protective benefits offered to purchasers, it actually causes purchasers' equipment to suffer increased wear and damage to the spiral gear, excessive wear in the planetaries, improper and poor shifting, seal leakage, and improper operation of the wet brakes. Despite use of these inferior ingredients and inadequate protective additives, Defendants' 303 THF is labeled and marketed to unsuspecting purchasers as meeting manufacturer specifications and providing certain benefits and anti-wear properties.

10.     For years, Defendants' conduct has harmed consumers like Plaintiff, who purchased the O'Reilly 303 Tractor Hydraulic Fluid, a product that was and is offered and sold as an acceptable tractor hydraulic fluid that meets certain manufacturer specifications and as fluid

4

that is safe for use in farm, construction and logging equipment and having certain characteristics and qualities that protect equipment from wear and damage.

11.    In reality, instead of receiving a product that was an acceptable tractor hydraulic fluid that met manufacturers' specifications, Plaintiff and other purchasers received a 303 THF Product that, contrary to Defendants' labeling, had no known specifications, had contents and additives that varied, were unknown, were obsolete, did not possess the claimed protective characteristics and/or did not meet one or more of the manufacturers' specifications and therefore caused consumers' equipment damage and harm, increased wear, and caused consumers to overpay for a product that was worthless and/or worth much less than the sale price.  Like many other consumers, Plaintiff purchased Defendants' 303 THF Product, and suffered damage as a result.

12.    In November 2017, because of the deceptive nature of the 303 THF products, the failures of the products to meet any published specification, and the damage the products could cause to consumers' equipment, the State of Missouri's Department of Agriculture, Division of Weights and Measures, banned Defendants and all other manufacturers and sellers from offering "303" THF products for sale in Missouri.

13.    In February of 2018, the State of Georgia's Department of Agriculture's Fuels & Measures Division directed that all tractor hydraulic fluid labeled as "303" be removed from sale by August 11, 2018.

14.    In July of 2018, the State of North Carolina's Department of Agriculture and Consumer Services directed that all tractor hydraulic fluid labeled, claimed, or implied to meet the obsolete John Deer "303" specifications be removed from sale by February 1, 2019.

## PARTIES

15.     Plaintiff Robert Thiry is a citizen and resident of Texas.

16.     Defendant Omni Specialty Packaging, LLC (Omni) is for-profit company with its principal place of business in Northbrook, Illinois.  Defendant Omni has advertised and sold its products throughout the state of Texas.

17.     Defendant O'Reilly Automotive Stores, Inc. (O'Reilly Stores) is a for-profit corporation organized and existing under the laws of the State of Missouri, with its principal place of business in Springfield, Missouri.  Defendant O'Reilly Stores has stores throughout the setae of Texas.

18.     Defendant Ozark Automotive Distributors, Inc. (Ozark) is a for-profit corporation organized and existing under the laws of the State of Missouri, with its principal place of business in Springfield, Missouri.  Defendant Ozark has advertised and sold its products throughout the state of Texas.

## JURISDICTION AND VENUE

19.     The United States District Court for the Southern District of Texas has personal jurisdiction over Defendants because Defendants transact business in Texas, with their various advertising methods and product sales directed toward Texas residents.  Additionally, Plaintiff purchased the 303 THF Product at issue in Texas.

20.     Federal jurisdiction is appropriate under the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d).  The amount in controversy in this action exceeds $5,000,000.00, exclusive of interest and costs.  Upon information and belief, Defendants' retail sales of the O'Reilly 303 THF Product total more than $2,000,000.00 in Texas during the stated Class Period.  On behalf of himself and all Class Members, Plaintiff seeks damages which include return of all amounts paid

by Texas purchasers for the O'Reilly 303 THF Product.  Also upon information and belief, the costs of a common flushing remedy and other common repairs to equipment necessitated as a result of use of the products at issue exceeds $3,000,000.00.  On behalf of himself and all Class Members, Plaintiff also seeks recovery for the costs of these common flushing remedies and repairs.  Finally, on behalf of himself and Class Members, Plaintiff also seeks punitive damages and attorneys' fees.

21.    This action is filed in United States District Court for the Southern District of Texas, which is an appropriate venue because the false representations, deceptive, dishonest, and misleading practices and the unjust enrichment, occurred in Texas and elsewhere throughout the United States.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

22.    Defendants O'Reilly Stores and Ozark (collectively, "O'Reilly") are in the business of selling and advertising for sale certain merchandise or retail products in trade or commerce at retail stores within Texas as well as numerous other states.

23.    Defendant Omni is in the business of manufacturing certain merchandise or retail products which are to be sold in trade or commerce at retail stores within Texas and numerous other states.

24.    During some or all of the time period from 2013 to the present, Defendants sold and advertised a 303 THF Product in yellow buckets called O'Reilly 303 Tractor Hydraulic Fluid.

25.    During some or all of the time period from 2013 to the present, Defendant Omni manufactured and advertised the O'Reilly 303 Tractor Hydraulic Fluid sold by Defendants.

## Defendants' Deceptive Labeling, Marketing and Advertising

26.    During some or all of the time period from 2013 to the present, the O'Reilly Defendants and Omni offered for sale in stores all over Texas and throughout the United States

7

the O'Reilly 303 Tractor Hydraulic Fluid product as an acceptable tractor hydraulic fluid meeting a wide number of manufacturers' specifications.

27.    Defendants falsely and deceptively labeled, marketed and offered for sale the O'Reilly 303 Tractor Hydraulic Fluid product (1) as a tractor hydraulic fluid formulated to resist leakage; (2) as a tractor hydraulic fluid containing advanced detergent/dispersant, anti-wear, anti-rust and anti-foam additives; (3) as a "true" multi-service oil providing excellent performance for the majority of hydraulic, wet brake and transmission requirements of most equipment manufacturers; (4) as providing excellent results for brake squawk, PTO clutch performance, rust protection, water sensitivity, extreme pressure anti-wear properties, and foam suppression; and (5) as a fluid that may be used as a replacement fluid in equipment made by Allis-Chalmers, Massey Ferguson, White, Allison, Case, International Harvester, Oliver, John Deere 303, Duetz, Ford and Caterpillar.

28.    Defendants' labeling, marketing, advertising and sale of the 303 THF Product has been widespread, continuous and contained on various signs, labels and advertisements throughout the State of Texas and the United States for years.  Representative examples of Defendants' labeling, marketing and advertising materials are set forth below.

29.    O'Reilly 303 Tractor Hydraulic Fluid was specifically labeled, marketed and advertised as follows:



30.     These representations were also contained in Defendants' advertising circulars and/or on Defendants' websites.

31.     By naming, labeling, marketing, advertising and selling the 303 THF Product in the foregoing manner, and by describing the product using words such as "formulated," "advanced," "multi-service" and "excellent performance," Defendants sought to create, and did create, an image in the minds of Plaintiff and other consumers that would lead a reasonable consumer to conclude that Defendants' 303 THF Product was completely safe and effective for use in consumers' equipment and all equipment made by the listed manufacturers.

32.     Defendants' product name, labeling, advertising and marketing of their 303 THF Product was material to the reasonable consumer.

33.     At the time of Defendants' labeling, advertisements, marketing and other representations, and as Defendants already knew, the representations regarding the 303 THF

Product were false, deceptive and misleading to consumers seeking to purchase tractor hydraulic fluid.

34.     The John Deere "303" designation is over 50 years old and has been obsolete for many years.  Certain ingredients of the original John Deere 303 fluid—such as sperm whale oil—have been banned since the 1970s and are no longer available for use.  As a result, manufacturers have been unable to make and sell true "303" fluid for over forty (40) years and there are no known specifications for 303 fluid.   Defendants knew or should have known that at the time they were marketing and selling the 303 THF Product during the Class Period, there were no specifications available for "303" tractor hydraulic fluid and, therefore, claims that the 303 THF Product met "303" specifications could not possibly be true, and Defendants had no way to ensure the accuracy of representations that their 303 THF Product was in compliance with any known specifications.

35.     As Defendants knew, or should have known, the 303 THF Product manufactured by Defendants and sold in the yellow buckets was made with products that were not suitable for use in blending a tractor hydraulic fluid, including poor quality base oils, waste oil, line flush or used motor oil and/or that the 303 THF Product lacked some or all of the additives required to provide the advertised "qualities," including but not limited to rust protection and foam suppression.

36.     As Defendants knew, or should have known, the 303 THF Product manufactured by Defendants and sold in the yellow buckets did not meet all current specifications (and failed to meet certain obsolete specifications) for any manufacturers of farm, logging and construction equipment.  Alternatively, Defendants knew, or should have known, they had no basis on which to sell the 303 THF Product as a tractor hydraulic fluid that met the specifications of all manufacturers listed on the label because, on information and belief, either 1) Defendants' test

10

data showed the viscosity, pour point and additive levels of the 303 THF fluids varied, was inconsistent, and did not meet some or all of the specifications of the manufacturers listed on the labels; or 2) Defendants did not have any test data to confirm the 303 THF Product always had the necessary and advertised performance properties and the viscosity, pour point or additive levels that met all manufacturers' specifications or that were needed for a fluid suitable for use in consumers' equipment.

37.    At no point in time, on the label of the 303 THF product or otherwise, did Defendants tell purchasers the truth, including that:

a.    The "303" designation is obsolete, an essential ingredient in the formula was banned in the 1970s, and there is no known 303 specification against which to test the fluids offered for sale;

b.    The 303 THF Product contained a "down-treated" additive package;

c.    The 303 THF Product was made with products that were not suitable for use in blending a tractor hydraulic fluid, including poor quality base oils, waste oil, line flush or used motor oil;

d.    Defendants' test data did not confirm all of the 303 THF Product met all manufacturers' specifications;

e.    Defendants have no idea whether all of the 303 THF Product they offered for sale met the requirements of, has acceptable anti-wear and performance properties, or is suitable for use in tractors or other equipment;

f.    The 303 THF Product may expose purchasers' equipment to increased wear and damage; and,

g.  Use of the 303 THF Product would cause damage to purchasers' equipment, such as damage to the spiral gear in the drive, excessive wear, seal leakage, high pump leakage, and damage from deposits, sludging and thickening.

38.  Instead, the 303 THF Product was deceptively offered for sale as a fluid containing quality base oils, sufficient additives, and meeting the obsolete and unavailable "303" specification.  Defendants continued to manufacture, market and sell the 303 THF Product in the state of Texas and throughout the United States even after learning of the reasons for the stop sale actions taken by the states of Missouri, Georgia and North Carolina and even after learning about the adverse testing those states performed on the 303 THF Product.

**Plaintiffs' Experience with Defendants' Advertising and Products**

39.  In the time period from 2013 to present, Plaintiff Thiry purchased Defendants' 303 THF Product in Magnolia, Texas.

40.  As with all Members of the Class, Plaintiff purchased Defendants' 303 THF Product based upon the label representations set forth above.

41.  As a result of Defendants' manufacturing and offering the 303 THF Product for sale in Texas and throughout the United States, Plaintiff and Class Members purchased a tractor hydraulic fluid that was falsely and deceptively offered for sale as a "303" fluid that contained quality base oils and additives, met required specifications and was safe for use in equipment when, in reality, the fluid offered was of uncertain quality, lacked adequate viscosity and additives, had a value much less than the price offered for sale, and was likely to expose equipment to increased risk of wear and damage.

42.    Plaintiff reasonably relied upon Defendants' representation that the fluid was a "303" fluid and, upon Defendants' own labeling, statements and advertisements concerning the particular qualities and benefits of the O'Reilly 303 THF Product.

43.    Based upon these representations, all reasonable  purchasers would consider Defendants' 303 THF Product to be suitable for use in tractors and other equipment and would not have any understanding or way to know that Defendants' 303 THF Product was of uncertain quality, lacked adequate viscosity and additives, had a value much less than the price offered for sale, and/or that use of Defendants' 303 THF Product would cause all equipment to suffer increased wear and damage.

44.    A reasonable consumer would consider Defendants' labeling, statements and advertisements when looking to purchase a tractor hydraulic fluid.  As a result of using Defendants' 303 THF Product, Plaintiff and Class Members:  (a) paid a sum of money for a product that was not as represented; (b) received a lesser product than labeled, advertised and marketed; (c) were deprived of the benefit of the bargain because the 303 THF Product was different than what Defendants represented; (d) were deprived of the benefit of the bargain because the 303 THF Product had less value than what was represented; (e) did not receive a product that measured up to their expectations as created by Defendants; and (f) suffered damage to their equipment, including but not limited to excessive wear, leakage in the seals, exposure to spiral gear damage, improper and poor shifting, wear and damage to the wet brakes, high pump leakage, and damage from deposits, sludging and thickening.

45.    When Defendants manufactured, named, labeled, marketed, advertised, distributed, and sold Plaintiff and Class Members their 303 THF Product, Defendants knew or should have known that product (1) did not meet manufacturer specifications and was not

acceptable for use as hydraulic fluid, transmission fluid, and gear oil in older tractors and other equipment; (2) was not an adequate substitute for and did not satisfy John Deere's JD-303 specifications and/or designation; (3) was not adequate to provides extreme pressure and anti-wear protection for tractor transmission, axles and hydraulic pumps; (4) was not adequate to protect against rust and corrosion; and (5) was not appropriate for use in equipment of Allis-Chalmers, Massey Ferguson, White, Allison, Case, International Harvester, Oliver, John Deere 303, Duetz, Ford and Caterpillar.  From at least late 2017 through the present, Defendants have known that three (3) states have banned the sale of Defendants' 303 THF Product because of deceptive and misleading labeling and because the fluid was likely to expose purchasers' equipment to increased wear and damage.

46.    Plaintiff used the 303 THF Product in the manner in which Defendants advised it could and should be used.

47.    As a result of Defendants' 303 THF Product not meeting specifications as labeled, advertised, marketed, warranted, and promised, Defendants acted in a negligent manner, breached express and implied warranties, were unjustly enriched, and fraudulently or negligently induced Plaintiff and Class Members to purchase their products through material misrepresentations.

48.    Defendants' manufacture, labeling, and sale of O'Reilly 303 Tractor Hydraulic Fluid was deceptive and misleading in at least the following respects:

>    (a) Defendants' use of John Deere's "303" designation in the name of the product is deceptive and misleading.  The O'Reilly 303 product is not a John Deere product, does not use John Deere 303's formula and cannot meet the specifications for John Deere 303.  Defendants packaged their O'Reilly 303 product in the yellow bucket with illustrations of modern tractors and

equipment, and used and traded on the John Deere name, so as to further the deceive and mislead and create impression that the 303 THF Product was a legitimate tractor hydraulic fluid that met the specifications for John Deere 303 and other John Deere equipment.

(b) Defendants placed a deceptive and misleading statement on the product label by claiming that John Deere 303 is one of the specifications for which O'Reilly 303 is "[s]uitable as a replacement fluid for the following manufacturers where a tractor hydraulic fluid of this quality is recommended."

(c) Defendants placed a deceptive and misleading statement on the product label by listing ten (10) other manufacturers as those for which O'Reilly 303 THF is "[s]uitable as a replacement fluid for the following manufacturers where a tractor hydraulic fluid of this quality is recommended," without specifying the equipment/specifications purportedly met for each of those ten (10) manufacturers or exactly where the product is "recommended."

(d) Defendants engaged in deceptive and misleading conduct in failing to provide any notice, disclaimer, or warning on the label that the O'Reilly 303 THF Product is for use only in older tractors and equipment and/or in providing an inadequate notice, disclaimer, or warning.

(e) Defendants placed a deceptive and misleading statement on the product label by listing manufacturers of equipment in which the O'Reilly 303 THF Product purportedly may be used, when in reality the product does not meet many of the specifications for the listed manufacturers' modern or older model equipment.

(f)  Defendants made a deceptive and misleading statement on the product label by representing that the O'Reilly 303 THF Product is "formulated to resist leakage."

(g)  Defendants made a deceptive and misleading statement on the product label when claiming that the O'Reilly 303 THF Product "[c]ontains advanced detergent/dispersant, anti-wear, anti-rust, and anti-foam additives."

(h)  Defendants made a deceptive and misleading statement on the product label when claiming that the O'Reilly 303 THF Product "is a true multi-service oil providing excellent performance for the majority of hydraulic, wet brake and transmission requirements of most equipment manufacturers."

(i)  Defendants made a deceptive and misleading statement on the product label when claiming that the O'Reilly 303 THF Product "provides excellent results for:

- Brake Squawk
- PTO clutch performance
- Rust protection
- Water sensitivity
- Extreme pressure anti-wear properties
- Foam suppression

(j)  Defendants made a deceptive and misleading statement on the product label when claiming the O'Reilly 303 THF Product was formulated to be a tractor hydraulic fluid when, in fact, the 303 THF Product was made with component products that were not suitable for use in blending a tractor hydraulic fluid, including poor quality base oils, waste oil, line flush or used motor oil.

49.  The conduct listed in paragraph 48(a)-(j) constitutes deceptive business practices.

16

50. This action is brought by Plaintiff against Defendants to recover all money paid by Plaintiff and Class Members to Defendants for purchase of the O'Reilly 303 THF Product which was labeled, marketed, advertised, and sold in the dishonest, misleading, and deceptive manners noted herein, for recovery of the damage caused to equipment owned by Plaintiff and the Class Members, for punitive damages, attorneys' fees, costs, and for all other remedies available to those aggrieved by Defendants' conduct.

51. This action is also brought by Plaintiff for class-wide injunctive relief to prohibit Defendants from continued sales of the O'Reilly 303 THF Product labeled in such a manner.

## CLASS ACTION ALLEGATIONS

52. Plaintiff brings this Class Action pursuant to Rule 23 of the Federal Rules of Civil Procedure, each on behalf of himself and the following Class of similarly situated persons:

> All persons and other entities who purchased O'Reilly 303 Tractor Hydraulic Fluid in Texas at any point in time from September 6, 2015 to present, excluding those who purchased for resale.

53. Also excluded from the Class are Defendants, including any parent, subsidiary, affiliate or controlled person of Defendants, Defendants' officers, directors, agents, employees and their immediate family members, as well as the judicial officers assigned to this litigation and members of their staffs and immediate families.

54. The 303 THF Product at issue was sold across Texas and the United States through retailers. The Class Members may be identified through use of sales receipts, affidavits, or through sales records.

55. The proposed Class is so numerous that joinder of all Class Members is impracticable. Although the exact number and identity of each Class Member is not known at this time, there are thousands of Members in the proposed Class.

56.    There are questions of fact and law common to the Class which predominate over questions affecting only individual Class Members.  The questions of law and fact common to the proposed Class arising from Defendants' actions include, without limitation, the following:

a.    The components and qualities of Defendants' 303 THF Product, and the cost to Defendants to manufacture, distribute, market and sell their 303 THF Product;

b.    Whether Defendants were unjustly enriched;

c.    Whether Defendants were negligent;

d.    Whether Defendants breached the express warranties provided with regard to the 303 THF Product;

e.    Whether Defendants breached the implied warranty of merchantability with regard to the 303 THF Product;

f.    Whether Defendants breached the implied warranty of fitness for particular purpose with regard to the 303 THF Product;

g.    Whether Defendants deliberately failed to disclose material facts to consumers regarding the quality of the 303 THF Product and the obsolete nature of the product and the specifications the product claimed to meet;

h.    Whether Defendants' manufacturing, labeling, advertising, marketing, and/or sale of their 303 THF Product was deceptive, unfair, and/or dishonest as alleged in paragraphs 7-10, 26-38, 41, 43-44, and 47-50, above;

i.    Whether Defendants' O'Reilly 303 THF Product was being labeled, advertised and marketed as alleged in paragraphs 7-10, 26-38, 41, 43-44, and 47-50, above;

j.    Whether Defendants' 303 THF Product in actuality was as alleged in paragraphs 9, 11, 33-38, 41, 43-45, and 47-50, above;

k.    Whether Defendants studied or tested their labeling and the effect of the labeling on consumers' perceptions, and whether Defendants studied the susceptibility of consumers who might purchase tractor hydraulic fluid;

l.    Whether Defendants' representations regarding their 303 THF Product were false and made knowingly by Defendants;

m.  Whether Defendants' representations were false and made negligently by Defendants; and,

n.  Whether use of the 303 THF Product caused and/or exposed equipment to damage.

57.    The representative Plaintiff's claims are typical of those of the putative Class because he purchased Defendants' 303 THF Product and was similarly treated.

58.    Plaintiff is an adequate representative of the putative Class because his interests do not conflict with the interests of other Members of the Class.  The interests of the other Class Members will be fairly and adequately protected by Plaintiff, and by then counsel who have extensive experience prosecuting complex litigation and class actions.

59.    A Class Action is the appropriate method for the fair and efficient adjudication of this controversy.  It would be impracticable, cost prohibitive, and undesirable for each Member of the Class to bring a separate action.  In addition, the presentation of separate actions by individual Class Members creates the risk of inconsistent and varying adjudications, establishes incompatible standards of conduct for Defendants, and/or substantially impairs or impedes the ability of Class Members to protect their interests.  A single Class Action can determine, with judicial economy, the rights of the Members of the Class.

60.    A Class Action is superior with respect to considerations of consistency, economy, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of this controversy.

61.    Class certification is also appropriate because Defendants have acted or refused to act on grounds generally applicable to the Class. The Class Action is based on Defendants' acts and omissions with respect to the Class as a whole, not on facts or law applicable only to the representative Plaintiff.  All Class Members who purchased Defendants' products were treated

similarly. Thus, all Class Members have the same legal right and interest in relief for damages associated with the violations enumerated herein.

62. Class certification is also appropriate for class-wide injunctive relief pursuant to Rule 23(b)(2).

63. Plaintiffs assert in Counts I through VIII, below, the following claims on behalf of themselves and the Class:

- Count I – Negligence

- Count II – Breach of Express Warranty

- Count III – Breach of Implied Warranty of Merchantability

- Count IV – Breach of Implied Warranty of Fitness for Particular Purpose

- Count V – Unjust Enrichment

- Count VI – Fraud/Misrepresentation

- Count VII – Negligent Misrepresentation

- Count VIII – Texas Deceptive Trade Practices Act

**COUNT I**
**(Negligence)**

64. Plaintiff incorporates by reference all preceding paragraphs of this Class Action Complaint as if fully set forth herein.

65. Defendants owed a duty of at least reasonable care to the purchasers of their 303 THF Product, including a duty to use reasonable care in the manufacture, sampling, testing, labeling and marketing of the finished 303 THF Product.

66. Defendants breached this duty by the acts and omissions alleged herein, including but not limited to:

a.      Distribution and use of misleading labeling information regarding the 303 THF Product qualities and OEM specifications met by product;

b.      Failing to adequately warn and instruct purchasers about the true nature of the 303 THF Product and potential harm to equipment caused by use of the 303 THF Product in equipment for which it does not meet specifications;

c.      Failing to adequately ensure the 303 THF Product manufactured and sold met the advertised specifications;

d.      Using component products not suitable for use in blending a tractor hydraulic fluid, including poor quality base oils, waste oil, line flush or used motor oil;

e.      Failing to utilize adequate testing and other controls to ensure the 303 THF Product met the advertised specifications; and,

f.      Instituting and/or allowing careless and ineffective product manufacturing protocols.

67.    As a result of Defendants' negligence, Defendants' 303 THF Product had contents and additives that varied, were unknown, were obsolete, did not possess the claimed protective characteristics, exposed purchasers' equipment in increased wear and damage and/or did not meet one or more of the manufacturers' specifications.

68.    Defendants' negligence caused or contributed to cause injuries and damages to Plaintiff and the Class Members, caused Plaintiff's and the Class Members' equipment to suffer harm and damage, including wear, damage and leakage in the seals, and exposure to damage in

the spiral gear in the drive, improper and poor shifting, wear and damage to the wet brakes, high pump leakage, and damage from deposits, sludging and thickening. Defendants' negligence also caused or contributed to cause Plaintiff and the Class Members to overpay for a product that was worthless and/or worth much less than the sale price.

69.    Plaintiff and Class Members are thus entitled to an award of compensatory damages, prejudgment interest and post-judgment interest.

70.    Defendants' conduct was grossly negligent and showed a complete indifference to or conscious disregard of the rights of others, including Plaintiff and Class Members, such that punitive damages are thus warranted.

## COUNT II
### (Breach of Express Warranty)

71.    Plaintiff incorporates by reference all preceding paragraphs of this Class Action Complaint as if fully set forth herein.

72.    Plaintiff and Class Members purchased Defendants' 303 THF Product.

73.    As set forth above, Defendants made common statements of facts regarding quality and use in the name and on the label of the 303 THF Product.

74.    The common statements Defendants made in the name and on the label of the 303 THF Product were made to induce Plaintiff and Class Members to purchase the 303 THF Product and/or were a material factor in inducing Plaintiff and Class Members to purchase the 303 THF Product, and therefore became part of the basis of the benefit of the bargain and an express warranty.

75.    As set forth above, the THF 303 Product did not conform to the statements of Defendants. As a result, Plaintiff and the Class Members did not receive goods as warranted by Defendants.

76.     Defendants have received from Plaintiff timely notification of the defects in their THF 303 Product.

77.     The failure of the THF 303 Product to conform to the statements of Defendants has caused injury and damage to Plaintiff and Class Members.

## COUNT III
### (Breach of Implied Warranty of Merchantability)

78.     Plaintiff incorporates by reference all preceding paragraphs of this Class Action Complaint as if fully set forth herein.

79.     Defendants directly or indirectly sold the 303 THF Product to Plaintiff and Class Members for use as described above.

80.     As set forth above, at the time Defendants sold the 303 THF Product, the product was not fit for its ordinary use and the use described by Defendants.

81.     Plaintiff and Class Members used the 303 THF Product for its ordinary purpose and the use described by Defendants.

82.     Defendants have received from Plaintiff timely notification of the defect in their 303 THF Product.

83.     The failure of the 303 THF Product to be fit for their ordinary purpose has cause injury and damage to Plaintiff and Class Members.

## COUNT IV
### (Breach of Implied Warranty of Fitness for Particular Purpose)

84.     Plaintiff incorporates by reference all preceding paragraphs of this Class Action Complaint as if fully set forth herein.

85.     Defendants directly or indirectly sold the 303 THF Product to Plaintiff and Class Members for use as described above.

86.     As set forth above, at the time Defendants sold the 303 THF Product, the product was not fit for its particular purpose of use as universal hydraulic fluid for tractors and/or other equipment.

87.     Defendants knew or should have known of the use for which the 303 THF Product was purchased.

88.     Plaintiff and Class Members reasonably relied upon Defendants' judgment that the 303 THF Product was fit for use as universal hydraulic fluid for tractors and/or other equipment.

89.     When the THF Product was sold by Defendants, it was not fit for such use as universal hydraulic fluid for tractors and/or other equipment.

90.     Defendants have received from Plaintiff timely notification of the defect in their 303 THF Product.

91.     The failure of the 303 THF Product to be fit for its particular purpose has caused injury and damage to Plaintiff and Class Members.

## COUNT V
### (Unjust Enrichment)

92.     Plaintiff incorporates by reference all preceding paragraphs of this Class Action Complaint as if fully set forth herein.

93.     As a result of Defendants' deceptive, fraudulent, and misleading naming, labeling, advertising, marketing, and sales of the 303 THF Product, Plaintiff and the Class Members purchased Defendants' 303 THF Product and conferred a benefit upon Defendants by purchasing obsolete and harmful tractor hydraulic fluid, which benefit Defendants appreciated and accepted.

94.     Those benefits were obtained by Defendants under false pretenses because of Defendants' concealments, misrepresentations, and other deceptive, misleading, and unfair conduct relating to the 303 THF Product.

95.     Defendants were enriched at the expense of Plaintiff and other Class Members through the payment of the purchase price for Defendants' 303 THF Product.

96.     As a direct and proximate result of Defendants' wrongful conduct and unjust enrichment, Plaintiff and Class Members have suffered damages in an amount to be determined at trial.

97.     Under the circumstances, it would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits that they received from Plaintiff and the other Class Members, in light of the fact that the 303 THF Product purchased by Plaintiff and the other Members of the Class was not what Defendants represented it to be.  Thus, it would be inequitable or unjust for Defendants to retain the benefit without restitution to Plaintiffs and the other Members of the Class for the monies paid to Defendants for the 303 THF Product.

98.     By reason of the foregoing, Defendants should be required to account for and disgorge all monies, profits, and gains which they have obtained at the expense of Plaintiff and Class Members.

## COUNT VI
### (Fraudulent Misrepresentation)

99.     Plaintiff incorporates by reference all preceding paragraphs of this Class Action Complaint as if fully set forth herein.

100.     Defendants made representations regarding their 303 THF Product, as set forth above, including without limitation the representations that the 303 THF Product was fit to be used in older tractors and other equipment, that the 303 THF Product met specifications, and that the 303 THF Product provided certain qualities, results and benefits.

101.     Defendants' representations set forth above, including without limitation the representations that the 303 THF Product was fit to be used in older tractors and other equipment,

that the 303 THF Product met specifications, that the 303 THF Product provided certain qualities, results and benefits, and Defendants' failure to inform consumers of the true nature of the product and the obsolete specifications, were false and made knowingly by Defendants, and were therefore fraudulent.

102.    Defendants' representations as set forth above, including without limitation the representations that the 303 THF Product was fit to be used in older tractors and other equipment, and that the 303 THF Product met specifications, that the 303 THF Product provided certain qualities, results and benefits, and Defendants' failure to inform consumers of the true nature of the product and the obsolete specifications, were made by each Defendant with the intent that Plaintiffs and other Class Members rely on such representations.

103.    Defendants' representations as set forth above, including without limitation the representations that the 303 THF Product was fit to be used in older tractors and other equipment, that the 303 THF Product met specifications, that the 303 THF Product provided certain qualities, results and benefits, and Defendants' failure to inform consumers of the true nature of the product and the obsolete specifications, were made by each Defendant despite knowing the representations were false at the time the representations were made, and/or without knowledge of the truth or falsity of the representations.

104.    Defendants' representations and omissions were material to the purchase of the 303 THF Product.

105.    Plaintiff and Class Members relied on Defendants' representations, and such reliance was reasonable under the circumstances.

106.    Defendants' conduct as set forth herein with regard to the name, labeling, marketing and sale of the 303 THF Product constitutes fraud on Plaintiff and all Class Members.

107.    Plaintiff and Class Members have been economically damaged by Defendants' fraudulent conduct with regard to the marketing and sale of the 303 THF Product.

108.    As a direct and proximate result of Defendants' illegal conduct, Plaintiff and Class Members have suffered ascertainable losses of money and other damages.

109.    Defendants' conduct as described herein was intentional and/or in reckless disregard for the rights of Plaintiff and other Class Members.

110.    Defendants' conduct is such that an award of punitive damages against each Defendant is appropriate.

## COUNT VII
### (Negligent Misrepresentation)

111.    Plaintiff incorporates by reference all preceding paragraphs of this Class Action Complaint as if fully set forth herein.

112.    Defendants made representations regarding their 303 THF Product, as set forth above, including without limitation the representations that the 303 THF Product was fit to be used in older tractors and other equipment, that the 303 THF Product met specifications and that the 303 THF Product provided certain qualities, results and benefits.

113.    Such representations were made by Defendants with the intent that Plaintiff and the Class Members rely on such representations in purchasing Defendants' 303 THF Product.

114.    Such representations were material to Plaintiff's and the Class Members' purchases of Defendants' 303 THF Product.

115.    Such representations were false.

116.    Defendants failed to use ordinary care and were negligent in making and/or allowing to be made the representations set forth above.

117.    Plaintiff and the Class Members relied on such representations and such reliance was reasonable under the circumstances.

118.    Plaintiff and Class Members have been economically damaged by Defendants' negligent conduct with regard to the marketing and sale of the 303 THF Product.

119.    As a direct and proximate result of Defendants' negligent conduct, Plaintiff and Class Members have suffered ascertainable losses of money.

**COUNT VIII**
**(Violations of Texas Deceptive Trade Practices Act)**

120.     Plaintiff incorporates by reference all preceding paragraphs of this Class Action Complaint as if fully set forth herein.

121.    The Texas Deceptive Trade Practices Act ("DTPA") prohibits false, misleading or deceptive acts and practices in connection with a trade or business.

122.    Plaintiff and Class Members are "consumers" within the meaning of § 17.54(4) of the DTPA in that they are individuals who acquired by purchase the goods or products that form the basis of this case, and suffered damages for which they did not receive compensation from any third party, person, or entity.

123.     Plaintiff and Class Members seek to recover damages against each Defendant under the DTPA, § 17.41 *et seq,* because Defendants knowingly and/or intentionally breached their implied warranties with respect to the 303 THF Products and also engaged in false, misleading, or deceptive acts or practices in the conduct of their trade of business, as set forth above and in general by (a) representing that the 303 THF Products had characteristics, ingredients, uses, or benefits which they do not; and, (b) representing that the 303 THF Products were of a particular standard, quality, or grade, when they were in fact or another.

124.    Defendants engaged in false, misleading or deceptive acts or practices with regard to the 303 THF Products, including, but not limited to, the use of deception, fraud, false pretense, false promise, misrepresentation, unfair practice and the concealment, suppression, or omission of material facts in connection with the sale or advertisement of their 303 THF Products in trade or commerce in the State of Texas and throughout the United States.

125.    Defendants' conduct set forth in paragraphs 7-11, 26-38, 41, 43-45, 47-50, and elsewhere above, including without limitation the representations that the 303 THF Products were fit to be used in older tractors and other equipment, and that the 303 THF Products met specifications, were false, misleading, or deceptive acts or practices.

126.    Defendants' conduct set forth in paragraphs 7-11, 26-38, 41, 43-45, 47-50, and elsewhere above, including without limitation the label representations that the 303 THF Products were fit to be used in older tractors and other equipment, that the 303 THF Products met specifications, and Defendants' failure to inform consumers of the true nature of the product and the obsolete specifications, were also  false, misleading, or deceptive acts or practices in that Defendants omitted or suppressed a material fact in that Defendants' 303 THF Products were not appropriate for use and did not meet specifications as labeled, advertised, marketed and sold.

127.    Defendants engaged in a pattern of conduct toward Plaintiff and all Class Members that, when taken in its totality, is and was false, misleading, or deceptive, in violation of the DTPA.

128.    Defendants' conduct in engaging in such false, misleading, or deceptive acts or practices constituted a producing cause of the damages suffered by the Plaintiff and Class Members such that Plaintiff and Class Members have the right and standing to maintain an action against Defendants under the DTPA.

129.    The Plaintiffs also have the right and standing to maintain an action against

Defendants under the DTPA because Defendants breached their implied warranties and that such a breach constituted a producing cause of the damages suffered by the Plaintiff and Class Members.

130.    Plaintiff and Class Members have suffered economic and other damages as a proximate result of Defendants' conduct with regard to the marketing and sale of the 303 THF Products.

131.    Defendants' conduct as described herein was intentional, done knowingly and intentionally, and was in conscious disregard of the rights of Plaintiff and other Class Members.

132.    Defendants' conduct is such that an award of treble damages against each Defendant is appropriate.

133.    Pursuant to the DTPA, Plaintiff and Class Members are entitled to be awarded Court costs and reasonable and necessary attorneys' fees.

134.    Plaintiff provided Defendants notice of the defect in their 303 THF Products, although such notice should be deemed unnecessary in light of the MDA action in 2017.

135.    Plaintiff will provide notice of this Complaint to the Consumer Protection Division.

WHEREFORE, Plaintiff, on behalf of himself and the Class described in this Class Action Complaint, respectfully requests that:

A.  The Court certify the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure, and adjudge Plaintiff and counsel to be adequate representatives thereof;

B.  The Court enter an Order requiring each Defendant to pay actual and punitive damages to Plaintiff and the other Members of the Class;

C.  The Court enter an Order awarding Plaintiff, individually and on behalf of the other Members of the Class the expenses and costs of suit, including

reasonable attorneys' fees and reimbursement of reasonable expenses, to

the extent provided by law;

D.  The Court enter an Order awarding to Plaintiff, individually and on behalf

of other Members of the Class pre-and post-judgment interest, to the extent

allowable; and,

E.   The Court enter an Order for such other and further relief as may be just

and proper.

## DEMAND FOR JURY TRIAL

Plaintiff and Class Members hereby demand a jury trial on all issues of fact and damages

in this action.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff and Class Members hereby designate the United States District Court for the

Southern District of Texas as the place of trial.

Date:  September 6, 2019                    Respectfully submitted,


EMERSON FIRM, PLLC


BY:   */s/ John G. Emerson*
John G. Emerson, TX Bar No. 06602600
830 Apollo St.
Houston, TX 77058
T: (800) 551-8649
F: (501) 286-4659
E: jemerson@emersonfirm.com

31

HORN AYLWARD & BANDY, LLC

BY:___/s/ Thomas V. Bender_____
       Thomas V. Bender, MO Bar #28099
       Dirk Hubbard, MO Bar #37936
       2600 Grand, Ste. 1100
       Kansas City, MO 64108
       (816) 421-0700
       (816) 421-0899 (Fax)
       tbender@hab-law.com
       dhubbard@hab-law.com

WHITE, GRAHAM, BUCKLEY,
& CARR, L.L.C

BY:_____/s/ Bryan White_____
       William Carr.  MO Bar #40091
       Bryan T. White MO Bar #58805
       19049 East Valley View Parkway
       Independence, Missouri 64055
       (816) 373-9080 Fax: (816) 373-9319
       bcarr@wagblaw.com
       bwhite@wagblaw.com

**ATTORNEYS FOR PLAINTIFFS
AND CLASS MEMBERS**